| | | |
|---|---|---|
| Curt Hepp, | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 4692 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Ultra Green Energy Services, LLC, | ) | |
| Defendant and Third Party Plaintiff, | ) | |
| | ) | |
| Robert J. Pierce, | ) | |
| Third Party Defendant, | ) | |
| | ) | |
| Cathy Williams Pierce, | ) | |
| Third Party Defendant, | ) | |
| and | ) | |
| | ) | |
| M1 Energy Risk Management, LLC | ) | |
| Defendant and Third Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Curt Hepp ("Hepp"), brings this action against the Defendants, Ultra Green Energy Services LLC ("Ultra Green") and M1 Energy Risk Management, LLC ("M1 Energy") alleging two counts of breach of contract. R. 53. Specifically, Hepp alleges that M1 Energy breached its contract with Hepp by failing to pay Hepp the total amount due pursuant to the terms of a jointly executed promissory note. *Id*. Hepp further alleges that Ultra Green breached its contract with Hepp by failing to honor its guarantee of M1 Energy's payment of the note. *Id*. Ultra Green filed a third-party complaint against Cathy W. Pierce ("Cathy"), Robert J. Pierce ("Robert") (collectively the "Pierce Defendants"), and M1 Energy asserting that the Pierce Defendants are liable for the breach of contract claims asserted in

1

Hepp's original complaint, R. 1, as well as other assorted state law claims against the Pierce Defendants and M1 Energy relating to the Pierce Defendants' alleged misconduct during their time as managing members of Ultra Green and owners of M1 Energy. R. 31. Currently before the Court is the Pierce Defendants' motion to dismiss Ultra Green's third party complaint on two grounds: (1) Counts I, II, X, XI, and XVI are barred as a result of a release entered into by Ultra Green and the Pierces (the "12(b)(6) portion"); and (2) the Court should decline to exercise supplemental jurisdiction over the remaining counts because they are state law claims that do not relate to the allegations in Hepp's complaint (the "12(b)(1) portion"). R. 84. For the following reasons, the Court denies the Pierce Defendants' motion to dismiss, R. 84, without prejudice.

## BACKGROUND[1]

The Court provided a detailed recitation of the relevant facts underlying this cause of action in its Opinion and Order dated May 22, 2014, and presumes familiarity therewith. R. 61. While those facts were taken from Hepp's amended complaint, R. 53, Counts I and II of Ultra Green's third party complaint adopt the factual allegations contained in paragraphs 1-53 of Hepp's original complaint[2] and simply assert that the third party defendants are liable for the conduct alleged

---

[1] Because the Court denies the Pierce Defendants' 12(b)(6) motion, which is only made with regard to Counts I, II, X, XI, and XVI, the Background section will be limited to the factual allegations contained therein.

[2] Hepp's original complaint, R. 1, contains slightly different factual allegations than those contained in Hepp's amended complaint, R. 53. However, for purposes of this motion, the factual differences are generally not relevant to the issues presented in this motion, and therefore will not be expounded upon unless necessary.

therein. R. 31 ¶¶ 58-60. As such, for purposes of this motion, the Court will accept the factual allegations contained in Hepp's original complaint, R. 1, as true and draw all reasonable inferences in favor of Ultra Green. *See Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Counts X, XI, and XVI of Ultra Green's third party complaint contain general factual allegations relating to the Pierce Defendants' alleged breach of Ultra Green's operating agreement by loaning Ultra Green assets to themselves and using Ultra Green assets to guarantee financial obligations without disclosing those obligations to Ultra Green's other managing members. R. 31 ¶¶ 94-100, 109-125, 149-91.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the amended complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial

plausibility when the plaintiff pleads factual content that allows courts to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678) (internal quotation marks omitted). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann,* 707 F.3d at 877.

## ANALYSIS

The Pierce Defendants move to dismiss Ultra Green's third party complaint on two grounds: (1) that Counts I, II, X, XI, and XVI are barred by a release in an agreement between Ultra Green and the Pierce Defendants (the "12(b)(6) portion"); and (2) that the remaining counts are state law claims which do not relate to Hepp's amended complaint, and as such, the Court should decline to exercise supplemental jurisdiction over them (the "12(b)(1) portion"). R. 84. In support of their motion, the Pierce Defendants' attached two exhibits. Exhibit A is a promissory note between M1 Energy and Hepp for $245,398, dated February 22, 2011. R. 84, Ex. A. Exhibit B is an affidavit by Robert, which has several documents attached to it as exhibits. R. 84, Ex. B. The first exhibit to Robert's affidavit is the purchase agreement through which Ultra Green bought out the Pierces' shares in the company. R. 84, Ex. B, Ex. A. The purchase agreement has several documents attached to it, which in relevant part are as follows: the promissory note executed as part of the purchase agreement; a document entitled "ETC Amount" which, as described by the purchase agreement, is a list of certain funds due and payable to Ultra Green; Ultra Green's claim form

for a refund of excise taxes; and the set-off agreement, which contains the release language the Pierce Defendants rely on for the 12(b)(6) portion of their motion. *Id.* Exhibit B of Robert's affidavit is an email from Cathy to other Ultra Green members, dated April 2, 2013, along with several tables allegedly showing Ultra Green's outstanding debts and credits. Exhibit C of Robert's affidavit is a string of emails from Robert to Cathy, dated Monday, April 22, 2013; from Robert to a man named Bill Pas, dated April 22, 2013; and an email from a woman named Michelle Linton to the Pierces dated April 22, 2013. R. 84, Ex. B, Ex. C.

The Pierce Defendants acknowledge that because they are attaching documents that are not included in the pleadings, the Court may be required to convert their 12(b)(6) motion into one for summary judgment. R. 84. However, the Pierce Defendants argue that conversion is not required in this case due to the exception espoused in *Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993) (extraneous documents are considered to be part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim). *Id.* The Pierce Defendants specifically argue that the Court's consideration of Robert's affidavit, and the documents attached thereto, should not operate to convert their motion to one for summary judgment, and that Ultra Green does not need the benefit of discovery to oppose the motion to dismiss because Ultra Green had prior knowledge of the documents attached to the motion. *Id.*

### A. Conversion of The Basis For The Pierce Defendants' Motion from 12(b)(6) to 12(c)

As a preliminary matter, the Pierce Defendants argue that they are entitled to dismissal under Rule 12(b)(6) because the set-off agreement contains a release which bars Ultra Green's claims. R. 84. However, a release is an affirmative defense, not an argument against the sufficiency of the pleadings. Fed. R. Civ. P. 8(c)(1); *Yassan v. J.P. Morgan Chase and Comp., et al.,* 708 F.3d 963, 975 (7th Cir. 2013). A motion to dismiss based on the existence of an affirmative defense, such as a release, is properly filed pursuant to Rule 12(c), not Rule 12(b)(6). *Yassan,* 708 F.3d at 975. As such, because the distinction between a 12(b)(6) and a 12(c) motion is primarily procedural and does not affect the standard by which the motion is evaluated, the Court will simply convert the 12(b)(6) portion of the motion to one filed under 12(c) and address it accordingly. *Prestone Prods. Corp. v. South/Win, Ltd.,* No. 13 C 1853, 2013 WL 5164024, at *2 (N.D. Ill. Sept. 13, 2013) (citing *Hayes v. City of Chicago,* 670 F.3d 810, 813 (7th Cir. 2012)).

### B. Whether the Court May Properly Consider the Documents Attached to the Pierce Defendants' 12(c) Motion

As the Pierce Defendants correctly point out, at the dismissal stage, a court's review is generally limited to the complaint and any documents attached thereto. *Yassan,* 708 F.3d at 975. If, in ruling on a motion to dismiss, a court chooses to consider documents external to the complaint, the court generally must convert the motion to one for summary judgment. *See 188 LLC. v. Trinity Indus., Inc.,* 300 F.3d

730 (7th Cir. 2002) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). However, a court may properly consider extraneous documents attached to a motion to dismiss without converting the motion to one for summary judgment if the documents are "referred to in the plaintiff's complaint and are central to his claim." *188 LLC,* 300 F.3d at 735 (quoting *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994)) (internal quotation marks omitted). While "there is no precise test for what makes a document 'central to' a claim, courts typically apply this exception where a claim arises from a contract or other written agreement between the parties, but the plaintiff neglected to attach all or certain relevant parts of that writing to the complaint, and where the complaint repeatedly refers to that writing." *Truhlar v. John Grace Branch #825 of the Natl. Assoc. of Letter Carriers*, No. 06 C 2232, 2007 WL 1030237, at *8 (N.D. Ill. March 30, 2007) (citing *Wright,* 29 F.3d at 1248).

The Pierce Defendants rely on the above exception to support their position that the Court is allowed to consider the documents attached to their motion without converting it to one filed pursuant to Rule 56. R. 84. The Pierce Defendants fail, however, to explain how the exception applies in this case. Instead, the Pierce Defendants recite, in a footnote, the above exception and summarily conclude that "Pierce's affidavit should not operate to convert the motion to one for summary judgment. There is no need for discovery or any other materials in order for Ultra Green to oppose the Pierces' motion. Ultra Green was well aware of the release and the two other documents attached to Robert Pierce's affidavit." R. 84 at 4, n. 2.

Accordingly, the Pierce Defendants leave it to the Court to determine on its own initiative whether the exception applies to the documents attached to their motion.

First, neither Ultra Green's third party complaint nor Hepp's original complaint (which Ultra Green's third party complaint incorporates by reference) refer to any of the documents attached to the Pierce Defendants' motion to dismiss, aside from the February 22, 2011, promissory note. Second, aside from the February 22, 2011, promissory note, which documents Ultra Green's guarantee of the note between M1 Energy and Hepp, none of the documents attached to the motion to dismiss are central to Ultra Green's claims, and again, the Pierce Defendants do not assert that they are. Specifically, a review of the remaining documents reveals that they do not "relate to the rights and duties of the parties, from which [Ultra Green's] claim arises." *Truhlar*, 2007 WL 1030237 at *9. Rather, the remaining documents relate to, or are central to, the Pierce Defendants' affirmative defense. Courts in this jurisdiction have previously held that documents which serve only to support an affirmative defense are central to the affirmative defense, not to the plaintiff's claims themselves. *Truhlar*, 2007 WL 1030237 at *9. (extraneous documents submitted with the motion to dismiss that supported the defendant's statute of limitations argument were not "central to" the plaintiff's claim, but rather, central to the defendant's affirmative defense). Therefore, aside from the February 22, 2011, promissory note, none of the extraneous documents attached to the Pierces' motion to dismiss fall within the above referenced exception, and the

Court may not consider them without converting the motion to one for summary judgment.

While the Pierce Defendants do not raise this argument, the Court notes that there is one other category of documents which a court may consider when analyzing a motion to dismiss without converting it to a motion for summary judgment – documents that a court may take judicial notice of. Several courts within the Seventh Circuit have taken judicial notice of documents such as settlement agreements and releases. However, the courts have generally only done so when the subject documents had previously been filed with the court during the course of litigation, or filed with the court in a prior related case. There is only one case within the Seventh Circuit where the court took judicial notice of a release that had not previously been filed in court, *Boeckman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801 (S.D. Ill. 2006). In that case, the court held that it could take judicial notice of the release because the defendant had asserted the release as an affirmative defense, the parties did not dispute the authenticity of the release, and the defendant had moved for judgment on the pleadings based on the release. *Boeckman*, 461 F. Supp. 2d at 808, n. 6.

As previously discussed, neither Robert's affidavit nor the purchase or set-off agreements attached to it have been previously filed with the Court in this litigation, or in a prior case. That being said, Ultra Green does not contest the authenticity of these documents in its opposition to the motion to dismiss. As such, with respect to the agreements, while they are not typically the kind of document

that a court would take judicial notice of, because the Pierce Defendants have asserted the release contained in the agreements as an affirmative defense, Ultra Green has not disputed the authenticity of the agreements, and the Pierce Defendants moved to dismiss on the basis of the release, there is authority within the Circuit which could support taking judicial notice of the agreements. The same cannot be said, however, for the remainder of the documents attached as Exhibits B and C to Robert's affidavit, including the emails from the Pierces and the tables purporting to represent Ultra Green's outstanding credits and debts. The Pierce Defendants have not cited to, and the Court is unaware of, any precedent which supports the Court taking judicial notice of such documents. As such, even if the Court takes judicial notice of the purchase and set-off agreements, the Court may not take judicial notice of the other documents attached to the motion.

Ultimately, whether the Court takes judicial notice of the purchase and set-off agreements is of no moment. Taking all well-pleaded facts as true and drawing all reasonable inferences in favor of Ultra Green, even if the Court were to consider the agreements, and the release included therein, they are not so unambiguous on their face to warrant dismissal at this stage. The purchase agreement simply sets forth the terms by which Ultra Green will purchase the Pierces' shares of the company. The set-off agreement, in addition to containing the release language[3], states that it, in concert with the purchase agreement, is intended to "fully and

---

[3] The release waives "all claims (known and unknown, foreseen and unforeseen) which each party might otherwise have had against the other party…regarding this set-off agreement and the purchase agreement." R. 84, Ex B, Ex. A.

finally settle the Pierce Credit and the Pierce Debt." However, there is no proper evidence before the Court regarding what the Pierce Credit and the Pierce Debt include. Specifically, there is no evidence before the Court regarding whether the Pierce Credit or Pierce Debt is meant to include the promissory notes that Robert and Cathy guaranteed on behalf of Ultra Green. Indeed, the Pierce Defendants rely on Exhibits B and C to Robert's affidavit, the emails and tables, to support the argument that the Parties were aware of all outstanding credits and debts when they executed the agreements, and therefore intended for the release to apply to any and all claims Ultra Green could ever have against the Pierce Defendants. The Pierces' reliance on these documents to establish the intent of the parties undercuts their argument that the agreements are unambiguous on their face and clearly intended to release the Pierces from any and all claims. And, as stated previously, the documents in Exhibits B and C to Robert's affidavit are not properly before the Court on a motion to dismiss.

Moreover, in their reply, the Pierce Defendants contend that the Court should adopt their interpretation of the release by asserting that the release language was negotiated and therefore entered into purposefully. R. 92 at 5. The Court, however, does not have any evidence of the substance of those negotiations before it. And again, any such evidence would not be properly before the Court on a motion to dismiss. As with the emails, the Defendants' reliance on outside negotiations to support their interpretation of the release reinforces the Court's finding that the agreements, and the release contained therein, are not clear and

unambiguous on their face. Finally, the Pierce Defendants argue that Ultra Green has not offered affidavits or other extrinsic evidence to support their contention that the release does not apply to their claims. *Id*. However, that is not Ultra Green's burden at this stage.

Ultimately, based on the evidence properly before it, the Court finds that even if it were to consider the agreements attached to the Pierce Defendants' motion to dismiss, the agreements are not so clear and unambiguous on their face to permit the Court to conclude that the release bars the claims Ultra Green has brought against the Pierce Defendants.

## CONCLUSION

For the reasons previously stated, the 12(c) portion of the Pierce Defendants' motion to dismiss, R. 84, is denied without prejudice. Because the Court maintains jurisdiction of Counts I, II, X, XI, and XVI of Ultra Green's third party complaint, the 12(b)(1) portion of the Pierce Defendants' motion to dismiss, R. 84, is also denied without prejudice. Alternatively, neither party has requested that the Court convert the instant motion to one for summary judgment. If the parties would like the Court to do so in light of the above ruling, then they may so move. This way, both Parties will have notice of the relevant standard of review and have the opportunity to submit additional evidentiary material of their own. *Truhlar*, 2007 WL 1030237, at *6 (citing *Venture*, 987 F.2d at 431).

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: December 17, 2014